# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| PHILIP JAMES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:20-CV-0786-K |
| | § | |
| ALLSTATE FIRE AND CASUALTY | § | |
| INSURANCE COMPANY, AND | § | |
| EDUARDO TORRES A/K/A EDDIE | § | |
| TORRES, | § | |
| | § | |
| Defendants. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court are Defendants Allstate Fire and Casualty Insurance Company ("Allstate") and Eduardo Torres' Motion to Dismiss (Doc. No. 4) and Plaintiff Phillip James' Motion to Remand (Doc. No. 6). After reviewing the Motions, Defendants' Response to the Motion to Remand, Plaintiff's Reply to Defendants' Response to the Motion to Remand, relevant caselaw, and the record, the Court **GRANTS** Plaintiff's Motion to Remand because a state court could find that a judgment establishing an insured's legal entitlement to Underinsured or Uninsured Motorist ("UI/UIM") benefits is not a condition precedent to stating a claim under Texas Insurance Code § 541.060. Because Plaintiff has alleged facts that provide a "reasonable basis" for a Court to find that Defendants' liability was "reasonably clear," the claim of bad faith settlement practices against Torres was properly before the state court. Because

1

Plaintiff properly alleged a claim against a non-diverse defendant, the Court lacks diversity jurisdiction and is required to remand the case. Because the Court grants Plaintiff's Motion to Remand, Defendants' Motion to Dismiss is **DENIED AS MOOT**.

## I.  Facts and Procedure

On May 29, 2019, Plaintiff Phillip James, a Texas citizen, was involved in a 3-car crash when John Doe performed an improper lane change, causing a second car to collide with Plaintiff's car while sending John Doe's vehicle airborne. John Doe's vehicle landed on top of Plaintiff's vehicle, at which point John Doe fled the scene. Plaintiff sustained serious injuries from the accident. Because John Doe fled, he is unidentifiable for the sake of insurance coverage. This led Plaintiff to file a claim for UI/UIM benefits with Allstate, his insurer. UI/UIM benefits, which insurers are offered to require under the Texas Insurance Code, apply when the damages of the insured are more than the coverage provided by the tortfeasor. *Brainard v. Trinity Universal Ins. Co.*, 216 S.W.3d 809, 812 (Tex. 2006) ("A motorist is underinsured if his or her liability insurance is insufficient to pay for the injured party's actual damages."). In his claim, Plaintiff requested as damages: past and future healthcare expenses, past and future lost wages and earning capacity, property damage and loss of use of Plaintiff's vehicle, past and future physical pain and suffering, past and future physical impairment, and past and future mental anguish.

On November 14, 2019, Plaintiff sent a package of all documents necessary to evaluate Plaintiff's claim to Allstate which included bills for past medical treatment

totaling over $29,000, including over $18,000 related to the emergency room visit on the date of the collision. Allstate, a citizen of Illinois, assigned the case to insurance adjuster Eduardo Torres, a citizen of Texas. On December 12, 2019, Torres responded to Plaintiff's demand by offering $17,459.04, which was more than $11,000 less than the requested medical costs. On December 16, 2019, Plaintiff's counsel sent a letter to Allstate rejecting the offer and asking Allstate's adjuster to provide a reasonable explanation of the basis for his offer as required by the Texas Insurance Code. On January 8, 2020, Torres responded to Plaintiff's December 16, 2019 letter by raising his offer by $1,000, to a total of $18,459.04. As for the explanation, Torres stated that "the emergency room bill had multiple diagnostic charges that were highly priced." At the time of filing suit, no other explanation has been provided.

Plaintiff filed a declaratory judgment action against Defendants in 298th District Court in Dallas County, Texas, alleging breach of contract by Allstate and violations of Texas Insurance Code §§ 541.060(a)(2) and 541.060(a)(3) by Torres. Plaintiff requested "the amount of a 'reasonable settlement offer' (including medical expenses: past and future, pain, suffering and mental anguish: past and future, physical impairment/disability: past and future, lost wages/loss of wage earning capacity)" along with treble damages under Tex. Ins. Code § 541.152(B) and "costs and reasonable and necessary attorneys' fees" pursuant to § 37.009 of the Texas Civil Practice and Remedies Code. Plaintiff alleged that the amount in controversy was greater than $100,000 but less than $200,000.

3

Defendants removed the case to federal court on the grounds that Torres, the non-diverse defendant, was improperly joined because no cause of action against him had accrued. Defendants then moved to dismiss the claims (Doc. No. 4) against both Allstate and Torres for failure to state a claim, arguing that a judgment against John Doe was necessary to trigger Allstate's duty to pay UI/UIM benefits. Defendants contend that Torres cannot be sued in his individual capacity as an adjuster and, even if he can, he did not act in bad faith by denying a claim when the duty to honor the claim did not exist. Because Plaintiff did not have a judgment against John Doe, Defendants argue, Plaintiff could not state a claim for breach of contract by Allstate or violations of the Texas Insurance Code by Torres.

Plaintiff did not respond to the Motion to Dismiss but filed a Motion to Remand (Doc. No. 6). In the Motion to Remand, Plaintiff argued that Torres was properly joined because a judgment against John Doe is not a condition precedent to filing a claim under Texas Insurance Code Section 541.060. Plaintiff argues that Defendants conflate the conditions required to bring suit for breach of contract, which requires that Plaintiff be "legally entitled to recover" damages, with the conditions required to bring a suit for bad-faith denial, which requires the lower threshold of "reasonably clear" liability for the insurance carrier.

Defendants respond that Plaintiff must have a judgment against John Doe before Defendants are required to provide coverage, so liability cannot be "reasonably clear" when the duty to cover does not yet exist. Because Plaintiff does not have a judgment,

Defendants argue, Torres cannot be liable for bad faith conduct because liability is not "reasonably clear." Because Torres cannot be liable for bad faith conduct, Torres is improperly joined.

## II.    Applicable Law

Because Torres' joinder determines whether this Court has diversity jurisdiction, the Court first examines whether Torres is properly joined before turning to the Motion to Dismiss. *See Wilson v. State Farm Mut. Auto. Ins. Co.*, 2020 WL 230853, at *2 (N.D. Tex. Jan. 15, 2020) (Starr, J.) (The Court "first take[s] up the motion to remand and address[es] the motion to dismiss only if it retained the case. That is because rulings on motions to dismiss are typically merits rulings resulting in dismissal with prejudice."). A court will find improper joinder if "there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Probasco v. Wal-Mart Stores Texas, L.L.C.*, 766 F. App'x 34, 36 (5th Cir. 2019), (citing *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc)). To determine whether a defendant is improperly joined, the district "court may conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant." *Id*. "[The] court must view all factual allegations in the light most favorable to the Plaintiff and any contested issues of fact or ambiguities of state law must be resolved in plaintiff's favor." *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 204 n.41 (5th Cir. 2016) (citing *Travis v. Irby*, 326

5

F.3d 644, 647 (5th Cir. 2003)).  "After all disputed questions of fact and all ambiguities in the controlling state law are resolved in favor of the non-removing party, the court determines whether that party has any possibility of recovery against the party whose joinder is questioned." *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002).

The Texas Insurance Code requires that insurers provide UI/UIM insurance. *See Brainard*, 216 S.W.3d 809, 812 (Tex. 2006) ("The Insurance Code requires insurers to offer Texas motorists UIM coverage and mandates that such coverage []provide for payment to the insured of all sums which he shall be legally entitled to recover as damages."). The UIM statute "protects insureds who are *legally entitled to recover* from owners or operators of. . .underinsured motor vehicles damages for bodily injury, sickness, disease, or death, or property damage resulting from the ownership, maintenance, or use of any motor vehicle." Tex. Ins. Code § 1952.101(a) (emphasis added). The Texas Supreme Court interpreted the phrase "legal entitlement to recover" to mean a Plaintiff must have a judgment establishing the liability and underinsured status of the other motorist before the insurer's duty to cover is triggered. *Brainard*, 216 S.W.3d 809, 818 (Tex. 2006) (citing *Henson v. Southern Farm Bureau Casualty Insurance Company*, 17 S.W.3d 652, 653–54 (Tex. 2000)).

The Texas Insurance Code also recognizes a cause of action when an insurer denies a claim or refuses to offer a fair settlement where liability is "reasonably clear." *See* Tex. Ins. Code § 541.060(a)(2)(A) (Prohibited conduct includes "failing to attempt

in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which the insurer's liability has become reasonably clear."). The Texas Supreme Court has held that the statutory "reasonably clear" standard is identical to the common-law bad-faith standard. *See Mid-Century Ins. Co. of Tex. v. Boyte*, 80 S.W.3d 546, 549 (Tex. 2002). The Texas Insurance Code allows "a person who sustains actual damages [to] bring an action against another person for those damages caused by the other person engaging in an act or practice defined. . .to be an unfair method of competition or an unfair or deceptive practice in the business of insurance." Tex. Ins. Code § 541.151(1). The term "Person" means an individual or business association "engaged in the business of insurance" and specifically "include[es] an []adjuster." Tex. Ins. Code § 541.002(2). An insured's claim for breach of an insurance contract is 'distinct' and 'independent' from claims that the insurer violated its extra-contractual common-law and statutory duties." *USAA Tex. Lloyds Co. v. Menchaca,* 545 S.W.3d 479, 489 (Tex. 2018).

### III.  Analysis

In the Motion to Remand, Plaintiff argues that complete diversity does not exist because Torres and Plaintiff are both citizens of Texas. Allstate does not deny that Torres is a Texas citizen but contends that the Court should ignore the non-diverse citizenship of Torres because he was improperly joined. In support, Defendants claim that: 1) Torres cannot be sued in his individual capacity as an adjuster and 2) even if he can be sued in his individual capacity, Plaintiff cannot state claim for bad faith

7

denial because Plaintiff has not established a judgment against John Doe. The Court disagrees. Because Torres "engages in the business of insurance" as an adjuster, Torres can be sued in his individual capacity. The Court finds that a judgment is not required to state a claim for bad faith denial because liability can be "reasonably clear" even when Plaintiff does not hold a judgment against John Doe. The Court finds that Plaintiff has stated a viable claim against Torres for denying a claim where liability is "reasonably clear." Because a viable cause of action exists against a non-diverse defendant, the Court lacks subject-matter jurisdiction over the case.

### A. Torres can be sued in his individual capacity as an insurance adjuster.

The first question is whether Torres can be sued in his individual capacity as an insurance adjuster under Tex. Ins. Code § 541.060(a). The Texas Insurance Code allows "a person who sustains actual damages [to] bring an action against another person for those damages caused by the other person engaging in an act or practice defined. . .to be an unfair method of competition or an unfair or deceptive practice in the business of insurance." Tex. Ins. Code § 541.151(1). The term "Person" means an individual or business association "engaged in the business of insurance" and specifically "include[es] an []adjuster." Tex. Ins. Code § 541.002(2). Section 541.060 is titled "Unfair Settlement Practice" and defines the conduct therein as, "unfair method[s] of competition or []unfair or deceptive act[s] or practice[s] in the business of insurance." *See* Tex. Ins. Code § 541.060(a). Because Section 541.060 defines acts

that are considered unfair or deceptive practices in the business of insurance, the Court finds that an adjuster who causes another person to sustain damages through one of the acts listed under Section 541.060 can be sued in his personal capacity.

While the plain text would lead to the conclusion that an adjuster can be sued under a Section 541.060, a few courts have rejected this approach, reasoning that "for an adjuster to be held individually liable, they [*sic*] have to have committed some act that is prohibited by the section, not just be connected to an insurance company's denial of coverage." *Messersmith v. Nationwide Mut. Fire Ins. Co.*, 10 F. Supp. 3d 721, 724 (N.D. Tex. 2014) (Solis, J); *see also Waste Mgmt., Inc. v. AIG Specialty Ins. Co.*, WL 3431816, at *12 (S.D. Tex. Aug. 9, 2017) (relying on *Messersmith* to reject finding an adjuster liable in his individual capacity); *Lopez v. United Prop. & Cas. Ins. Co.*, 197 F. Supp. 3d 944, 950 (S.D. Tex. July. 11, 2016) (finding the same); *Meritt Buffalo Events Ctr., LLC v. Cent. Mut. Ins. Co.*, 2016 WL 931217, at *4 (N.D. Tex. Mar. 11, 2016) (Fitzwater, J.) (finding the same). The recurring theme in those cases, however, is that the insurance adjuster did not have settlement authority over the given dispute. *See e.g.*, *Messersmith*, 10 F. Supp. 3d at 724 ("Zimmer cannot be held liable under this section because, as an adjuster, Zimmer does not have settlement authority on behalf of Nationwide; her sole role is to assess the damage."). That both distinguishes the case before the Court and provides a logical explanation for the difference—an adjuster cannot act in bad faith where he cannot act at all. Defendants argue that Torres did not have the authority to offer a settlement because Plaintiff did not have a "legal

entitlement to recovery." But that argument directly contradicts the facts. After Plaintiff filed his claim, Torres offered Plaintiff $17,459.04. Because Torres did have the authority to offer a settlement, and did so in the present case, the Court finds that Torres "engaged in the business of insurance." Because Torres "engaged in the business of insurance," he can be sued in his individual capacity as an adjuster.

The Western District reached a similar conclusion, observing that while "a few courts had found that § 541.060(a)(2)(A) applies only to insurers, and not to adjusters," other courts have held that § 541.060(a)(2)(A) provides a cause of action against insurance adjusters, reasoning that adjusters "engage[] in the business of insurance by investigating, processing, evaluating, approving, and denying claims." *Trejo v. Allstate Fire & Cas. Ins. Co.*, 2019 WL 4545614, at *5 –*6 (W.D. Tex. Sept. 19, 2019). In the Notice of Removal, Defendant states that, "federal courts overwhelmingly hold that adjusters are not liable under Texas Insurance Code sections 541.060(a)(2), (a)(3)" and cites the Court to *Wilson,* 2020 WL 230853, at *1. Plaintiff correctly points out that the quote employed by Defendants was the Northern District summarizing the arguments of the Defendants in that case. The quote was not related to a finding.

Considering the procedural posture of the Motion to Remand, even if competing authority existed, "the split in authority regarding the scope of an insurance adjuster's liability under the Texas Insurance Code must be resolved in favor of remand." *Trejo*, 2019 WL 4545614, at*6. The Court is persuaded by the Western District. Because an

10

adjuster investigates, processes, evaluates, approves, and denies claims, he "engages in the business of insurance" for the purpose of § 541.060(a)(2)(A). Because Torres "engages in the business of insurance," he can be sued in his individual capacity under § 541.060(a)(2)(A).

> **B. A state court could find that a judgment is not a precondition to stating a claim under Texas Insurance Code Section § 541.060(a)(2)(A).**

Once the Court has established that Torres can be sued in his individual capacity, the question remains whether there is a claim that Plaintiff can pursue. A court will find improper joinder if "there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Probasco*, 766 F. App'x at 36, (citing *Smallwood*, 385 F.3d at 573 (5th Cir. 2004)). Plaintiff brings his claim against Torres under Section § 541.060(a)(2)(A) which states: "It is an unfair method of competition or an unfair or deceptive act or practice in the business of insurance to engage in the following unfair settlement practices with respect to a claim by an insured or beneficiary: failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which the insurer's liability has become *reasonably clear*." Tex. Ins. Code § 541.060(a)(2)(A) (emphasis added). Because the claim against the non-diverse defendant falls under § 541.060(a)(2)(A), the question is whether Defendants' liability can be "reasonably clear" even though Plaintiff does not hold a judgment against John Doe.

To establish a breach of contract for UI/UIM claims, Texas law requires that the insured hold a legal judgment against the tortfeasor. "Texas motorists UIM coverage and mandates that such coverage: provide for payment to the insured of all sums which he shall be legally entitled to recover." *Brainard*, 216 S.W.3d at 812. The Texas Supreme Court has interpreted the phrase "legally entitled to recover" to mean that the insured must have a judgment establishing liability before the contractual duty of the insurer is triggered. *See id*. at 818. ("[[T]he [underinsured-motorist] insurer is under no contractual duty to pay benefits until the insured obtains a judgment establishing the liability and underinsured status of the other motorist. Neither requesting [underinsured-motorist] benefits nor filing suit against the insurer triggers a contractual duty to pay."). The parties agree that *Brainard* requires Plaintiff to establish John Doe's liability as condition to the breach of contract claim.

On the other hand, Chapter 541 only requires that liability be "reasonably clear" for Plaintiff to state a claim of bad faith denial against Torres. *See* Tex. Ins. Code § 541.060(a)(2)(A). The Texas Supreme Court has held that the statutory "reasonably clear" standard is identical to the common-law bad-faith standard. *See Mid-Century Ins. Co. of Tex.*, 80 S.W.3d at 549. Plaintiff argues that a reasonable basis for a claim against Torres exists because a court could find that Defendants' liability was "reasonably clear" and Torres settlement offer was neither in good faith nor complied with the "reasoned explanation" requirement under 541.060(a)(3). Defendants respond that the duty to honor the claim does not exist until John Doe's liability is established, so

12

Torres cannot be acting in bad faith by offering a settlement where one was not required. Defendants do not offer a rebuttal for the allegedly insufficient explanation. When examining the joinder, the Court only asks if there is a reasonable basis for the state court to find Torres liable without an existing judgment.

Because the statutes delineate between "legally entitled to recover" and "reasonably clear" liability, a state court could find that a judgment is not a precondition to recovery under Texas Insurance Code § 541.060(a)(2)(A). An insured's claim for breach of an insurance contract is 'distinct' and 'independent' from claims that the insurer violated its extra-contractual common-law and statutory duties. *USAA Tex. Lloyds Co.*, 545 S.W.3d at 489. Because the "reasonably clear" standard has been interpreted as identical to the common law bad faith standard, Plaintiff's claim under Texas Insurance Code § 541.060(a)(2)(A) is 'distinct' and 'independent' from Plaintiff's breach of contract claims.  Because the § 541.060(a)(2)(A) claim is distinct and independent from the breach claims, the Court finds that a state court could find that a judgment against John Doe is not necessary for stating a claim against Torres for bad-faith denial.

The Western District confronted the same question under virtually identical facts in *Trejo v. Allstate Fire & Cas. Ins. Co.*, 2019 WL 4545614. There, the court relied on Fifth Circuit precedent, stating that "In *Hamburger*, the Fifth Circuit observed that, if bad-faith claims were available only after an insured's legal entitlement to recovery was established, an insured 'could never successfully assert a bad faith claim against his

13

insurer for failing to attempt a fair settlement of a UIM claim.'" *Trejo*, 2019 WL 4545614, at *7 (citing *Hamburger v. State Farm Mut. Auto. Ins. Co.*, 361 F.3d 875, 880–81 (5th Cir. 2004)). The Fifth Circuit relied on Texas Supreme Court precedent that an insurer's common-law and statutory duties of good faith and fair dealing do not extend beyond entry of judgment in favor of its insured. *Hamburger*, 361 F.3d at 880. "Because an insured does not have a bad-faith cause of action against an insurer after there is a judgment against the insurer, 'at which time there are no longer duties of good faith and the relationship becomes one of judgment debtor and creditor.'" *Id.* (citing *Mid–Century Ins. Co. of Tex. v. Boyte,* 80 S.W.3d 546, 549 (Tex. 2002)). "With this concern in mind, the Fifth Circuit rejected the argument. . .that liability cannot be reasonably clear until the insured is found in a legal proceeding to be entitled to recover." *Trejo,* 2019 WL 4545614, at *7.

Defendants argue that *Hamburger* is distinguishable from the current case and, either way, is no longer applicable following the Texas Supreme Court's holding in *Brainard*. Because *Hamburger* is distinguishable, Defendants claim that *Trejo* does not apply as a result. Defendants argue that *Hamburger* is distinguishable because it does not involve a claim adjuster nor the fraudulent joinder inquiry. Per the earlier analysis, an adjuster can be sued in his individual capacity. And the fact that the Court is conducting a joinder inquiry does not negate the applicability of *Hamburger*'s legal holding. If anything, it requires a lower threshold than a merits inquiry because the Court resolves any ambiguities in favor of Plaintiff before asking whether a state court

14

*could* find that Plaintiff has stated a claim against Torres. The Court is not persuaded that these distinctions negate the application of *Hamburger* and *Trejo*. Defendants further argue that *Hamburger* was a summary judgment ruling on the parties' dispute under the DTPA and Texas Insurance Code. This procedural posture is different from the present case, which was brought under the Declaratory Judgment Act. Other than point out the procedural difference, Defendants offer no reasoning as to why this would undermine the legal conclusion in *Hamburger*. The Court finds that *Hamburger*'s holding is controlling and directly relevant to the case at bar.

Two years after *Hamburger*, the Texas Supreme Court in *Brainard* reiterated its holdings that interpreted the phrase "legally entitled to recover" as requiring a judgment establishing liability. *See Brainard*, 216 S.W.3d at 818. There, the Texas Supreme Court was analyzing whether prejudgment interest is included in what a UI/UIM claimant is "legally entitled to recover as damages" and decided that "UIM insurance [only] covers prejudgment interest that the underinsured motorist would owe the insured." *See id*. at 812–15. The Texas Supreme Court held that:

> We have determined that this language means the UIM insurer is under no contractual duty to pay benefits until the insured obtains a judgment establishing the liability and underinsured status of the other motorist. Neither requesting UIM benefits nor filing suit against the insurer triggers a contractual duty to pay.
>
> *Brainard*, 216 S.W.3d at 818 (citing *Henson,* 17 S.W.3d at 653–54).

15

The Texas Supreme Court also analyzed a different section of the Texas Insurance Code which awards attorney fees to insurance-claimants who must seek counsel to enforce their insurance contract. *See id*. at 817 (analyzing Tex. Civ. Prac. & Rem. Code § 38.002). Defendants focus on the language of this section in support of their argument that *Brainard* nullifies *Hamburger*'s analysis of § 541.060(a)(2)(A). When suing under § 38.002, the insurance-claimant must show that the insurer failed to pay the "just amount" owed within 30 days of presentment of the claim. *Id*. The Texas Supreme Court was analyzing whether the claimant could receive attorney fees under § 38.002 when the insurer did not honor the UI/UIM claim within 30 days of presentment. *See id*. But presentment alone does not trigger the contractual duty to pay a UI/UIM claim. *Id*. at 818. As a result, the claimant was not entitled to attorney fees under Chapter 38. *Id*. at 819.

The Texas Supreme Court's holding in *Brainard* does not negate the Fifth Circuit's analysis in *Hamburger*. The Western District relied on *Hamburger* to reject the argument "that liability cannot be reasonably clear until the insured is found in a legal proceeding to be entitled to recover." *Trejo*, 2019 WL 4545614, at *7. Defendants argue that *Trejo* incorrectly "circumnavigates" the Texas Supreme Court's decision in *Brainard*, which was issued after *Hamburger*. The Court disagrees with Defendants' characterization of *Trejo*'s analysis as "circumnavigating" considering the Western District addressed the relationship between *Hamburger* and *Brainard* in five paragraphs over 3 pages. *See id*. at *7–*9; *Circumnavigate*, Merriam-Webster.com Dictionary (July

16

28, 2020), https://www.merriam-webster.com/dictionary/circumnavigate ("To go around instead of through."). The Western District observed that:

> *Brainard* did not address whether an insured may assert a bad-faith claim against her insurer before litigating the other motorist's liability and underinsured status. Instead, *Brainard* held only that a plaintiff may not be awarded pre-judgment interest on a breach-of-contract claim against her insurer for failure to pay benefits before securing a judgment establishing a third party's liability for the damages resulting from the third party's negligence.
>
> *Trejo*, 2019 WL 4545614, at *8.

The Western district observed that "Allstate's interpretation of *Brainard* would require this Court to ascribe the same meaning to the phrases "legally entitled to recover" and "reasonably clear," thereby "violat[ing] the axiomatic rule that when a legislature uses different text in adjacent statutes it intends that the different terms carry a different meaning." *Id*. The Western District concluded that, "because *Hamburger* focuses specifically on § 541.060 claims containing the phrase 'reasonably clear,' and *Brainard* addresses only § 1952.101 claims containing the phrase 'legally entitled to recover,' *Brainard* does not address or call into doubt *Hamburger*'s holding." *Id*. Defendants cite the Court to this exact quote and curiously claims, "the fact that *Hamburger* focuses specifically on § 541.060 claims is exactly why it (and by extrapolation, *Trejo*) cannot apply here." The Court believes that the cited text leads to

17

the opposite conclusion. The contractual claim and the extra-contractual claim are separate causes of action that warrant separate analysis. The fact that *Hamburger* focuses on § 541.060 is the exact reason it does apply here and why *Brainard* doesn't modify the analysis.

Because the contractual and extra-contractual claims are distinct and independent, the Court does not extrapolate *Brainard* onto Fifth Circuit and Texas Supreme Court precedent addressing § 541.060(a)(2)(A). Because the phrases "legally entitled to recover" and "reasonably clear" liability have separate meanings, a state court could find that a judgment is not necessary to establish a claim under § 541.060(a)(2)(A).

## C. Plaintiff alleged facts that established there is a "reasonable basis" for a court to find that Allstate's obligation was "reasonably clear."

Because Plaintiff has shown that a state court could find that a judgment is not necessary to bring a claim under Section 541, the Court turns to the allegations to see if a state court could find that Torres violated Tex. Ins. Code § 541.060(a)(2)(A) or (a)(3). A court will find improper joinder if "there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Probasco*, 766 F. App'x at 36 (citing *Smallwood*, 385 F.3d at 573). To determine whether a defendant is improperly joined, the district "court may conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to

determine whether the complaint states a claim under state law against the in-state

defendant." *Id*. "[The] court must view all factual allegations in the light most favorable

to the Plaintiff and any contested issues of fact or ambiguities of state law must be

resolved in plaintiff's favor." *Int'l Energy Ventures Mgmt., L.L.C.*, 818 F.3d at 204 n.4

(citing *Travis*, 326 F.3d at 647). Plaintiff alleges that:

1. On May 29, 2019, Plaintiff was involved in a 3-car accident caused by John Doe in which Plaintiff sustained serious injuries. John Doe fled the scene and his identity could not be ascertained for recovery purposes.

2. At the time of the accident, Plaintiff was acting in a reasonable and prudent manner and did not cause the accident.

3. On November 14, 2019, Plaintiff sent a package of all documents necessary to evaluate Plaintiff's claim to Allstate which included bills for past medical treatment totaling over $29,000, including over $18,000 related to the emergency room visit on the date of the collision.

4. On December 12, 2019, Torres responded to Phillip James' demand by offering $17,459.04.

5. On December 16, 2019, Plaintiff's counsel sent a letter to Allstate rejecting the low offer and asking Allstate's adjuster to provide a

reasonable explanation of the basis for his low offer as required by the Texas Insurance Code.

6. On January 8, 2020, Torres responded to Plaintiff's December 16, 2019 letter by raising his offer by $1,000. As for the explanation, Torres stated that "the emergency room bill had multiple diagnostic charges that were highly priced." At the time of filing suit, no other explanation has been provided.

Because the joinder analysis is about Torres, the question is whether a state court could find a cause of action under Section 541. Texas Insurance Code § 541.060 (a)(2)(A) requires Torres to "attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which the insurer's liability has become reasonably clear." Because Plaintiff was seriously injured by a driver who fled the scene (and is therefore a UI/UIM motorist) and provided documentation for his medical claims, a state court could find that Allstate's liability was reasonably clear.

A state court could find, given Allstate's reasonably clear liability, Torres' settlement offer was not fair or in good faith because it was less than the documented medical expenses. Texas Insurance Code § 541.060 (a)(3) required that Torres provide "a reasonable explanation of the basis in the policy, in relation to the facts or applicable law" for the settlement offer he made. In response to Plaintiff's request for an explanation about the settlement amount, Torres responded that "the emergency room bill had multiple diagnostic charges that were highly priced." The letter does not explain

20

why the offered amount was about $11,000 less than proven medical expenses. The explanation does not even say the diagnostics were unreasonable, but only that they were highly priced. Considering Plaintiff had been in a serious car accident, it is not unreasonable that he might incur significant medical expenses. This explanation is unclear about the past medical expenses and does not even attempt to respond to the rest of the demand, which included future medical expenses, property damage, past and future pain and suffering, and past and future mental anguish. Given these allegations, a state court could find that Torres did not provide "a reasonable explanation of the basis in the policy, in relation to the facts or applicable law" for the settlement offer he made.

Because a state court could find that Torres violated Section 541, the Court finds that Plaintiff has shown a reasonable basis for a cause of action.

## IV.    Conclusion

Because Torres "engages in the business of insurance" as an adjuster, Torres can be sued in his individual capacity. The Court finds that a judgment is not required to state a claim for bad faith denial because liability can be "reasonably clear" even when Plaintiff does not hold a judgment against John Doe. Because Plaintiff has alleged facts that could lead a state court to find Torres violated Section 541, the Court finds that Plaintiff has stated a viable for claim against Torres for denying a claim where liability is "reasonably clear" and failing to provide a reasonable explanation for the proposed settlement. Because a viable cause of action exists against a non-diverse defendant, the

Court lacks subject-matter jurisdiction over the case. Because the Court lacks subject-matter jurisdiction, Plaintiff's Motion to Remand (Doc. No. 6) is **GRANTED** and Defendants' Motion to Dismiss (Doc. No. 4) is **DENIED AS MOOT**.

      **SO ORDERED.**

      Signed July 28th, 2020.

*Ed Kinkeade*
_____
ED KINKEADE
UNITED STATES DISTRICT JUDGE